ELLIOT S. BLUT, ESQ. (SBN 162188)
BLUT LAW GROUP, APC
1925 Century Park East, Suite 850
Los Angeles, CA 90067
Telephone: (310) 203-0038
Facsimile: (310) 203-0048
E-mail: eblut@blutlaw.com

Attorney for Plaintiff, Jeffrey Huang

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY HUANG, individually and derivatively on behalf of ACCELERLIST, INC., a Delaware S-Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVIS A. RENN, an individual, and DOES 1-10,<br><br>Defendants.<br><br>ACCELERLIST, INC., a Delaware S-Corporation,<br><br>Nominal Defendant. | Civil Action No.: 2:25-cv-00010<br><br>**COMPLAINT FOR DAMAGES AND FOR EQUITABLE RELIEF; DEMAND FOR JURY TRIAL** |

Plaintiff Jeffrey Huang, individually and derivatively on behalf of Accelerlist, Inc., brings this action against Defendant Travis A. Renn for breach of contract, breach of fiduciary duty, fraud, and conversion of funds. The Defendant, in his role as CEO and President of Accelerlist, Inc., violated the terms of a 2019 settlement

1

agreement and an addendum thereto, and shareholder agreement with Plaintiff Jeffrey Huang — a co-equal 45% shareholder in the company.

Defendant systematically disregarded the corporate structure of Accelerlist, Inc., treating it as a personal sole proprietorship rather than adhering to its obligations as a corporation. By misappropriating and embezzling company funds, breaching fiduciary duties, and concealing material financial transactions, Defendant violated the aforementioned agreements and the basic requirements of corporate governance.

Plaintiff seeks to recover unpaid distributions, damages for the misuse of company funds, damages for breach of fiduciary duty and equitable relief, including an injunction to prevent further misuse of corporate assets.

## PARTIES

1.  Plaintiff, Jeffrey Huang ("Huang") is an individual residing in Dallas, Texas. He is a co-founder and 45% shareholder of Accelerlist, Inc., a Delaware S-Corporation, and has suffered personal and financial harm due to the Defendant's actions.

2.  Defendant Accelerlist, Inc. ("Accelerlist") is a Delaware S-Corporation with its principal place of business in Nashville, Tennessee. The company has failed to fulfill its obligations under the Shareholders Agreement, including the distribution of dividends and providing required financial disclosures to shareholders.

3.  Defendant Travis A. Renn ("Renn") resides in Nashville, Tennessee. He has served as CEO and President of Accelerlist, Inc. at all relevant times, and has breached his fiduciary duties by neglecting the formalities and transparency obligations required of a corporation, including failing to provide financial disclosures, misclassifying personal expenses as corporate expenditures, and unilaterally inflating his compensation.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states, and the amount in dispute exceeds $75,000, excluding

interest and costs.

5. Venue is proper because Section 16(e) of the Shareholder's Agreement, ratified in 2020, states:

> [T]he state and federal courts of Los Angeles County, California shall have exclusive jurisdiction and venue over any dispute arising out of [the Shareholders] Agreement, and the parties hereby consent to the jurisdiction of such courts.

## DERIVATIVE ALLEGATIONS

6. Accelerlist, Inc. is completely controlled and dominated by Defendant Renn. Renn is the sole officer and director. All of the allegations are asserted directly against Renn. Demands that he stop were made and disregarded. To the extent any demands to stop specific actions were not made, a demand to those in control of Accelerlist, Inc. to bring suit in its own name would have been futile because the wrongful conduct alleged was conducted by those in charge, namely Defendant.

## FACTUAL ALLEGATIONS

7. Plaintiff and Defendant co-founded Accelerlist, Inc. ("Accelerlist"), a Delaware S-Corporation.

8. In 2016, Caleb Roth invested $25,000 into Accelerlist, Inc., in exchange for 10% ownership stake.

9. In 2019, Plaintiff and Defendant entered into a Settlement Agreement that outlined key terms of their partnership. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "1". In March of 2020, Plaintiff and Defendant executed an Addendum to the Settlement Agreement ("Addendum"). A true and correct copy of the Addendum is attached hereto as Exhibit "2".

10. In 2020, the parties formalized their business relationship through a Shareholders Agreement that clarified key terms of their partnership, including profit sharing, financial transparency, and management duties. Although Mr. Roth did not sign the Shareholders Agreement, the agreement remains enforceable as between

BLUT LAW GROUP, APC
1925 CENTURY PARK EAST, SUITE 850
LOS ANGELES, CA 90067

Plaintiff and Defendant. A true and correct copy of the Shareholders Agreement is attached hereto as Exhibit "3".

11. Defendant failed to distribute dividends as required. From June to November 2024, $48,872.75 in dividends owed to Plaintiff remained unpaid. Section 2.2(b) of the Shareholders Agreement states:

> [T]he Corporation will determine the surplus, if any, and net profit, if any, on the books of the Corporation, and if positive will declare a dividend, without the need for any meeting of directors or stockholders, of the total of such amount and pay such dividend to the stockholders of the Corporation in accordance with their respective ownership percentages.

Additionally, Section 2.2(c) of the Shareholders Agreement states:

> [A]ll dividends declared pursuant to Section 2.2(b) will be paid no later than forty-five (45) days after the end of the calendar month in question.

12. Despite clear requirements, Defendant disregarded the corporate formalities by failing to provide the required financial disclosures, including quarterly profit and loss statements, and cash flow reports. Section 2.9 of the Shareholders Agreement requires:

> [The Corporation] to retain an independent third-party accountant or accounting firm to (a) compile financial statements of the Corporation on a quarterly and annual basis, and (b) verify periodically the validity and accuracy of the Corporation's financial transactions and reports.

Section 2.9 further mandates that these verifications "shall be provided to Jeffrey Huang at no longer than quarterly intervals." This lack of transparency reflects the Defendant's failure to observe the corporate formalities and instead aligns with the behavior of a sole proprietorship. Repeated requests for this information were either ignored or met with incomplete responses. By failing to provide the required financial disclosures, and by not using a transparent payroll solution to distribute compensation

to shareholders and officers, Defendant prevented Plaintiff from understanding the scale and depth of the financial misconduct.

13. Section 2.10 of the Shareholders Agreement requires the Corporation to retain a third-party payroll vendor, such as Gusto to manage all payroll and contractor payments. Despite this, in October 20, 2021, Defendant unilaterally rejected Plaintiff's request to use a transparent payroll provider like Gusto.

14. Section C of the Addendum states:

> On a quarterly basis, Company shall provide to Huang unaudited financial reports including standard income statement, balance sheet and "sources and uses of cash" statement (a/k/a flow of funds statement or a statement of changes in financial position), all of which shall be prepared by the Company's outside accountant.

Exhibit "3" at Section C.

15. Defendant embezzled company funds, treating Accelerlist, Inc.'s bank account as his personal account by concealing transactions to personal accounts and misclassifying personal expenses as business costs from 2020-2024. These transactions started in 2020 and included automobile-related charges ranging from $800 to $1,400 per month, parking charges between $100 and $800 per month, rent payments of $850 monthly, office supplies and repairs costing between $200 and $1,700, and even a $3,000 Zelle payment to the Defendant's ex-wife. No supporting documentation for these expenses was provided, and the details behind these transactions were not disclosed to Plaintiff or the other shareholders, even when explicitly requested.

16. Defendant mis-categorized several transactions on the profit and loss statements. For example, personal automobile insurance was mislabeled as "health insurance" in January 2024, and again mislabeled as "business insurance" form April to July 2024. Defendant did not respond to requests for further documentation. A pattern of repeated mis-categorization over several months, combined with lack of transparency and awareness of power imbalance, suggests this was a premeditated

scheme to conceal personal expenses.

17. When confronted about these questionable business expenses in August 2024, Defendant retroactively re-classified these expenses as personal benefits, further demonstrating his unilateral control over company finances as though it were a sole proprietorship, rather than acting within the boundaries of a corporate structure that requires shareholder approval and transparency. In addition, the Defendant increased his annual compensation to approximately $75,000-$80,000, mostly in the form of personal benefits, without board approval or shareholder disclosure. The Defendant's actions violate Section 2.3 of the Shareholders Agreement, which establishes:

> [T]he Corporation will pay to Travis A. Renn a monthly salary of $3,000.00 for his services to the Corporation as chief executive officer, to be paid in accordance with the Corporation's normal payroll practices.

Any adjustment to Defendant's salary requires "the approval of the board of directors" and must align with the Consumer Price Index (CPI) or another amount deemed appropriate by the board. The Defendant's unauthorized increase resulted in overcompensation totaling at least $127,031.00.

18. Defendant issued loans to himself and related entities without disclosure to shareholders or board approval, ignoring the corporate formalities and governance practices that separate corporate finances from personal dealings. In 2021, the Defendant issued a $66,000 loan to Rennbrook Ventures, and a $6,243 loan to Travis A. Renn personally. These loans were not disclosed to the Plaintiff, and only discovered by Plaintiff when looking through 2021 tax returns, which were not made available to Huang until August 2024.

19. In 2022, Defendant secured a $150,000 loan from Stripe Capital without obtaining shareholder approval. This loan included a fixed fee of approximately $30,000, which was not reflected in the company's profit and loss statements. The

COMPLAINT FOR DAMAGES AND FOR EQUITABLE RELIEF;   CIVIL ACTION NO. 2-25-cv-00010
DEMAND FOR JURY TRIAL

existence of this loan was concealed from shareholders until May 2023, when Defendant was unable to pay distributions due to lack of available funds. During this email exchange, the Defendant falsely stated over email in May 2023 that delayed distributions by an additional month would ensure "plenty of cash" to pay the shareholders "promptly, each month". The delay in monthly distributions continue to grow over time.

20. In October 2024, Defendant secured a $32,000 loan from Stripe Capital without obtaining shareholder approval which included a fixed fee of approximately $6,400, which was not reflected in the company's profit and loss statements.

21. Defendant admitted in an August 2024 email that he intentionally withheld financial information to prevent shareholders from learning about the company's declining performance. This admission further indicated a pattern of concealment designed to obscure the company's true financial state from Plaintiff.

22. By July 2024, despite monthly net operating profits reported since 2021, Accelerlist's bank balance had dwindled to just $10,000. This discrepancy between reported profits and actual bank balances, combined with the ongoing failure to pay dividends, indicates potential misuse or embezzlement of company funds.

23. Throughout the decline of Accelerlist's monthly recurring revenue—from $78,000 to $43,000—the Defendant continued to prioritize personal expenses. His failure to reduce these expenses contributed to the company's inability to meet its financial obligations, further harming the interests of Plaintiff and other shareholders.

24. In August 2023, Defendant received a $3.25 million buy-out offer from Threecolts, a software company. However, he rejected this offer unilaterally without informing Plaintiff or providing the required written notice. Section 6.2 of the Shareholders Agreement states:
> Stockholder(s) receiving a Buy-Out Offer… shall promptly deliver to the Corporation and the other Stockholders… a written notice… no later than thirty (30) days prior to the closing date of such Buy-Out.

Defendant breached Section 6.2 by not disclosing the terms of the agreement and

7

deprived the Plaintiff of the opportunity to consider or influence the decision.

25. In addition, Section 6.1 of the Shareholders Agreement states:
> If any Stockholder receives a Buy-Out Offer, and Stockholders who, at such time, own of record and beneficially fifty-five percent (55%) or more of the Equity Securities… elect to accept such Buy-Out Offer as to their Equity Securities, then the Controlling Interest shall have the right to require that all Stockholders Transfer all (but not less than all) of their Equity Securities to the Buy-Out Offeror on the same terms and subject to the same conditions of purchase and sale.

By not disclosing the buy-out terms and preventing the drag-along rights in Section 6.1 from triggering, Defendant sidelined Plaintiff and prevented him from protecting his equity.

26. After rejecting the buyout offer, Accelerlist's business recurring revenue dropped as low at $43,000 per month. Accelerlist's operating expenses are approximately $25,000 to $30,000 per month, with a $2,000 per month decline in monthly revenue. As a direct result of Defendant's actions, Accelerlist, Inc. is hardly able to generate a profit. Defendant's operational and financial mismanagement will cause Accelerlist, Inc. to default on its significant outstanding obligations within the next seven months unless major changes to curb unnecessary spending are immediately implemented. Without Defendant's removal, Accelerlist, Inc. will be unable to operate.

27. On September 9, 2024, after email communication between Defendant and Huang broke down, Huang sent Defendant a demand letter ("Demand") requesting (1) Accelerlist, Inc.'s financial statements, (2) immediate payment of owed distributions, (3) an explanation of suspicious and unauthorized charges, and (4) compliance with standard payroll procedure. Defendant failed to respond meaningfully to the Demand.

### FIRST CAUSE OF ACTION
**(Breach of Contract – Direct and Derivative Claim)**

28. Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 27

above as if set forth herein in full.

29. Plaintiff and Defendant both signed the Settlement Agreement, Addendum, and Shareholders Agreement, thus they are both bound to its terms.

30. Plaintiff performed all duties and obligations owed by him under the agreements except any such duties and obligations that are excused due to Defendant's actions.

31. Defendant breached the Shareholders Agreement by failing to notify shareholders of a profitable buy-out offer. Section 6.2 of the Shareholders Agreement requires Defendant to provide written notice of any formal buy-out offers to the shareholders within 30 days. Defendant breached this obligation in August 2023 by unilaterally rejecting a $3.25 million buy-out offer without notifying Plaintiff, thereby denying Plaintiff the opportunity to consider or influence the decision.

32. Section 6.1 of the Shareholders Agreement grants shareholders holding at least 55% equity the right to compel other shareholders to participate in a sale. By failing to disclose the buy-out offer, Defendant prevented Plaintiff from exercising this right.

33. Defendant breached Section 2.9 of the Shareholders Agreement, which mandates that the Corporation retain an independent third-party accountant to provide certified quarterly and annual financial statements to shareholders. Defendant failed to provide these required financial disclosures, concealing his financial misconduct. This breach of transparency deprived Plaintiff of the opportunity to assess the company's financial health and make informed decisions.

34. Defendant breach Section C of the Addendum, which requires Accelerlist to provide Plaintiff with financial reports prepared by a third-party accountant on a quarterly basis. Defendant failed to provide these required financial disclosures, concealing his financial misconduct. This breach of transparency deprived Plaintiff of the opportunity to assess the company's financial health and make informed decisions.

COMPLAINT FOR DAMAGES AND FOR EQUITABLE RELIEF;   CIVIL ACTION NO. 2-25-cv-00010
DEMAND FOR JURY TRIAL

35. As a direct result of Defendant's breaches of contract, Plaintiff was damaged in an amount above the jurisdictional limit of this Court including but not limited to being deprived of the significant financial payout from the buy-out offer in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty – Direct and Derivative Claim)

36. Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 35 above as if set forth herein in full.

37. Defendant Travis A. Renn, as CEO of Accelerlist, Inc., owed fiduciary duties to the corporation and to Plaintiff Jeffrey Huang, a 45% shareholder. These duties include loyalty, good faith, and due care as required under California Corporations Code § 309 and the Shareholders Agreement.

38. Defendant breached these duties by:

    (a) unilaterally increasing his salary without authorization,

    (b) embezzling funds by charging personal expenses as business costs,

    (c) failing to provide required financial disclosures,

    (d) concealing multiple loans and a buy-out offer from shareholders,

    (e) withholding shareholder distributions owed to Plaintiff despite positive net profits.

    (f) obtaining a personal loan from the company without adequate consideration.

39. Defendant's actions directly caused financial harm to Plaintiff, depriving him of access to rightful distributions and concealing the company's true financial state.

40. As a direct result of Defendant's breach of fiduciary duty, Plaintiff has suffered significant financial loss, including unpaid distributions, concealed funds, and other damages in an amount according to proof at trial.

///

# THIRD CAUSE OF ACTION

## (Conversion – Derivative Claim)

41. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 40 above as if set forth herein in full.

42. As a shareholder, Plaintiff is entitled to his share of company funds, including withheld distributions. Defendant Travis A. Renn wrongfully exercised control over these funds by diverting them for personal use and refusing to release them to Plaintiff despite demands.

43. Defendant embezzled company assets, including company funds, for personal benefit without authorization. Specifically,

   (a) Defendant used company funds to purchase a personal automobile and classified it as a business expense, and

   (b) Defendant charged other personal expenses to the company, without proper documentation or approval.

44. Defendant's actions constitute conversion under California law. He wrongfully exercised control over company funds by paying for personal pension and retirement benefits, health insurance/medical benefits, auto insurance, gym membership, meals and entertainment, automobile charges, travel, office expenses and landscaping.

45. As a direct result of Defendant's conversion, Plaintiff has been deprived of his rightful distributions, and company assets have been misused for Defendant's personal benefit. Plaintiff is entitled to the return of all misappropriated funds, including the value of the personal automobile and other unauthorized expenditures, along with compensation for the loss of use of these funds.

46. Under California Civil Code § 3336 and settled tort principles, Plaintiff is entitled to recover the value of the withheld distributions, personal expenditures improperly charged to the company, and compensation for the loss of use of these funds.

COMPLAINT FOR DAMAGES AND FOR EQUITABLE RELIEF;   CIVIL ACTION NO. 2-25-cv-00010
DEMAND FOR JURY TRIAL

47. Defendant's conduct in this regard was despicable, fraudulent, willful, wanton, malicious and oppressive. As a result of such conduct, Plaintiff, in addition to nominal and compensatory damages, are entitled to an award of exemplary or punitive damages.

## FOURTH CAUSE OF ACTION

### (Fraud – Direct and Derivative Claim)

48. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 47 above as if set forth herein in full.

49. Defendant Travis A. Renn knowingly and intentionally embezzled company funds and concealed material facts about the company's financial state. As described in the Factual Allegations, Defendant

   (a) misclassified personal expenses as business-related costs,

   (b) provided false assurances in May 2023 about the company's cash flow and the ability to pay future distributions.

50. Defendant was fully aware that his representations were false and undertook these actions with the intent to deceive Plaintiff and other shareholders.

51. Plaintiff relied on Defendant's false representations and assurances to understand the company's financial health. Defendant imposed limits on Plaintiff's audit rights in the Shareholders Agreement, which prevented Plaintiff from independently verifying the company's finances. This lack of access caused Plaintiff to rely on Defendant's statements, allowing the fraud to go unnoticed and resulting in further financial harm.

52. Plaintiff lost the opportunity to pursue reviving the Threecolts buy-out offer based on Defendant's false assurances of the company's financial health. If Defendant had been truthful about the company's finances, Plaintiff would have had a strong justification to rally Caleb Roth and try to revive the deal.

53. Plaintiff's reliance on each of Defendants' representations was a substantial factor in causing Plaintiff harm.

54. As a direct result of Defendant's fraudulent actions, Plaintiff suffered financial losses, including concealed unpaid distributions, excess compensation diverted to Defendant, a missed buy-out opportunity, and other damages according to proof.

55. Defendant's conduct in this regard was despicable, fraudulent, willful, wanton, malicious and oppressive. As a result of such conduct, Plaintiff, in addition to nominal and compensatory damages, are entitled to an award of exemplary or punitive damages.

## FIFTH CAUSE OF ACTION

**(Removal of Defendant Travis A. Renn as Officer and/or Director of Accelerlist, Inc. for Breach of Fiduciary Duty – Derivative Claim)**

56. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 55 above as if set forth herein in full.

57. Plaintiff is a 45% shareholder of Accelerlist, Inc. As such, under California *Corporations Code* section 304, Plaintiff is authorized to bring this suit for the removal from office of any officer and/or director in the case of fraudulent or dishonest acts or gross abuse of authority or discretion with reference to the corporation.

58. As an officer and/or director of Accelerlist, Inc. Defendant owed Plaintiff statutory and fiduciary duties of good faith and fair dealing, and fiduciary duty of loyalty and care in the operation of the business pursuant to California Corporations Code § 309 and as specified in the Shareholders Agreement.

59. Defendant failed to discharge these duties under the Shareholders Agreement.

60. Defendant engaged in self-dealing in violation of his fiduciary duty owed to the Company.

61. Each of the foregoing failures are ongoing and are and were the actual proximate cause of losses, income, economic opportunity, and other financial harm to

Accelerlist, Inc..

62. Economic losses, financial harm, and general damages will continue to accrue so long as Defendant remains an officer and/or director of the corporation.

63. Plaintiff prays for a court order removing Defendant as an officer and/or director of Accelerlist, Inc. and for an award of costs and attorney's fees, according to proof.

## SIXTH CAUSE OF ACTION

### (Preliminary Injunction – Derivative Claim)

64. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 63 above as if set forth herein in full.

65. Unless and until restrained, enjoined or compelled by the Court, Defendant will continue to cause significant harm to Accelerlist, Inc. and to Plaintiff.

66. The harm caused by Defendant's actions is not liquidated, and for which some items of damage cannot be readily determined, such as loss of business goodwill, so that all of the damages sustained by Accelerlist, Inc. and Plaintiff cannot be adequately compensated by an award of money damages.

67. Plaintiff has no adequate remedy at law. Plaintiff is informed and believes that losses will continue to accrue, particularly if Defendant continues to breach his fiduciary duties.

68. Accordingly, Plaintiff seeks a preliminary and permanent order enjoining Defendant from conducting any business on behalf of Accelerlist, Inc. or using Accelerlist, Inc.'s funds for any purpose.

69. Plaintiff also seeks a permanent injunction, to the extent necessary to enjoin and compel Defendant as set forth above, according to proof at trial.

70. Plaintiff also seeks an order removing Defendant as officer of Accelerlist, Inc. and enjoining him from interfering in any manner with the operation of the business.

///

BLUT LAW GROUP, APC
1925 CENTURY PARK EAST, SUITE 850
LOS ANGELES, CA 90067

## SEVENTH CAUSE OF ACTION

### (Accounting)

71. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 70 above as if set forth herein in full.

72. Despite Plaintiff's repeated requests, Defendant failed to provide Plaintiff with Company bank statements, quarterly profit and loss statements, and cash flow statements.

73. Further, Defendant concealed corporate transactions and mischaracterized expenses on the profit and loss statements.

74. Defendant, as CEO and President of Accelerlist, has a duty to account for all income and expenses of the corporation.

75. Defendant failed to honestly account for the income and expenses of Accelerlist.

76. Defendant is in the exclusive possession and control of the accounting records to show the income and expenses of Accelerlist.

77. Plaintiff requests that Defendant provide him with Company bank statements, quarterly profit and loss statements, and cash flow statements, ranging from January 1, 2020 to December 31, 2024 certified by an independent forensic accountant.

78. Plaintiff further requests that Defendant account for the income and expenses of Accelerlist ranging from January 1, 2020 to December 31, 2024.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

1. Compensatory damages in an amount to be determined at trial, including but not limited to:

   (a) $1,462,500 in lost compensation resulting from the Defendant's unilateral rejection of the $3.25 million buy-out offer in August 2023,

(b) $48,872.75 in unpaid shareholder distributions,

(c) At least $127,031.00 in excess compensation received by the Defendant,

(d) $36,400.00 in loan fees from the undisclosed Stripe Capital loan, and

(e) all other financial damages resulting from the Defendant's mismanagement and fraudulent actions.

2. Punitive Damages for Defendant's willful, wanton, and malicious conduct.

3. Ordering the Defendant to return to Accelerlist, Inc. all funds that were misclassified or improperly charged as business expenses for personal use.

4. Ordering the Defendant to personally pay for equitable accounting (a full forensic audit of Accelerlist, Inc. from January 1, 2020 through December 2024) to uncover any additional financial misconduct unknown at this time.

5. Ordering the Defendant to personally pay all costs of the lawsuit, including reasonable attorney's fees and all other expenses incurred in bringing this action, as provided in Section IX of the Settlement Agreement, which states,

> "in the event of any dispute over the enforcement and/or breach of any term of this Agreement, the prevailing Party thereto shall be entitled to recover its reasonable attorneys' fees and costs".

6. Enjoining Defendant from any further management of company funds or financial decisions without full transparency and shareholder approval.

7. Pre-judgment and post-judgment interest at the maximum rate allowed by law.

8. For removal of Defendant as an officer of Accelerlist, Inc.

9. For preliminary and permanent order enjoining Defendant from conducting any business on behalf of Accelerlist or using Accelerlist funds for any purpose.

10. For a permanent injunction, to the extent necessary to enjoin and compel Defendant as set forth above, according to proof at trial.

11. That in accordance with the Shareholders Agreement Defendant provide Plaintiff with monthly financial reports, including standard income statements, balance sheets, and "sources and uses of cash" statements (a/k/a flow of funds statements or a statement of changes in financial position), all of which shall be prepared and certified by the Company's outside accountant.

12. For such Other and Further Relief as the Court may deem just and proper.

DATED: January 2, 2025          BLUT LAW GROUP, APC

                                By: */s/ Elliot S. Blut*
                                    ELLIOT S. BLUT
                                    Attorney for Plaintiff, Jeffrey Huang

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: January 2, 2025          BLUT LAW GROUP, APC

                                By: */s/ Elliot S. Blut*
                                    ELLIOT S. BLUT
                                    Attorney for Plaintiff, Jeffrey Huang